THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JANETA DIMANTE, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | 23 C 15110 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| GARY SCHNAYDERMAN, | ) | |
| | ) | |
| *Defendant*. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Janeta Dimante alleges that Defendant Gary Schnayderman took advantage of their fleeting romantic relationship to defraud Dimante. Schnayderman allegedly spun a false story of the two living together in Florida, induced Dimante to contribute about $350,000 to purchase a home in Florida, and then prevented her from moving in. Dimante filed suit against Schnayderman, alleging fraud and conversion. Pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), Schnayderman moves to dismiss Dimante's complaint for lack of personal jurisdiction, improper venue, and failure to state a claim. For the following reasons, the Court grants Schnayderman's motion to dismiss [27] for lack of personal jurisdiction.

## BACKGROUND

In June 2022, Janeta Dimante, an Illinois resident and citizen, met Gary Schnayderman, a resident and citizen of Florida, while Dimante was in Florida visiting a friend. (Dkt. 23 ¶¶ 1–2, 6). Upon meeting, Schnayderman and Dimante immediately initiated a romantic relationship. (*Id.* at ¶ 8). Within a week of dating, Schnayderman told Dimante about the imminent forced sale of his home due to an incident involving his aggressive and dangerous German Shepherds. (*Id.* at ¶ 9).

1

The two also discussed purchasing a home together, living together, and getting married. (*Id.* at ¶¶ 10–12). Dimante even brought her daughter to Florida to meet Schnayderman. (*Id.* at ¶ 13).

Within two weeks of meeting, Dimante and Schnayderman located a house in Florida to purchase together, opened a joint bank account in Florida, and agreed that each would contribute 50% towards the purchase price. (*Id.* at ¶¶ 14–17). Dimante then returned home to Illinois and asked a friend to travel to Florida and help Schnayderman secure a home loan. (*Id.* at ¶¶ 18–20). While in Illinois, Dimante also liquidated annuity funds and obtained personal loans from friends living in Illinois to fund her half of the purchase price. (*Id.* at ¶¶ 21–24).

While Dimante was in Illinois, Schnayderman "communicated" with her "regarding the status of her obtaining the funds for her half of the purchase [price]." (*Id.* at ¶ 25). During the same time Dimante was in Illinois, Dimante initially deposited $25,000 into the couple's joint banking account in Florida, but Schnayderman subsequently "instruct[ed]" her to transfer the funds back to her personal account in Illinois and re-deposit the funds into his personal account in Florida. (*Id.* at ¶¶ 26–28). On July 28 and 29, 2022, Dimante made two deposits of $25,000 and $320,000 into Schnayderman's personal account in Florida from her personal account in Illinois. (*Id.* at ¶¶ 28–29). Dimante also provided Schnayderman with an additional $5,000 towards the cost of obtaining a loan. (*Id.* at ¶ 30). On August 5, 2022, Dimante and Schnayderman purchased a house together at 15 Lakecliff Drive, Ormand Beach, Florida, 32174. (*Id.* at ¶ 31). In total, Dimante contributed $354,572.81 towards the purchase. (*Id.* at ¶¶ 32–33). Schnayderman, however, did not contribute any of his personal funds and obtained a mortgage to cover his share. (*Id.* at ¶¶ 34–35). Both parties are on the title to the home. (*Id.* at ¶ 36).

Towards the end of the home purchase process, the couple's relationship soured. Dimante alleges that Schnayderman became verbally abusive after she deposited the funds into his personal

account. (*Id.* at ¶ 37). The day after the home purchase, Schnayderman terminated his relationship with Dimante and refused to give her a key to the property. (*Id.* at ¶¶ 38, 43). When Dimante requested to see the house, Schnayderman wanted her to sign a waiver of liability in case any incident occurred with his German Shepherds. (*Id.* at ¶ 44). Dimante did not dare to move into the house because she feared Schnayderman's dangerous dogs and numerous firearms. (*Id.* at ¶¶ 40–42). Although Schnayderman refused to allow Dimante to move into their shared home, Schnayderman promised to pay her back for her contribution after selling his other home. (*Id.* at ¶¶ 45–46). But after selling the other home for $1.3 million, Schnayderman still refused to pay Dimante back. (*Id.* at ¶¶ 47–48).

Dimante alleges that Schnayderman fraudulently induced her to contribute money towards purchasing the Florida house by making Dimante believe they would live together in the house and get married, despite Schnayderman having no intention of Dimante moving in and living with him in the house. (*Id.* at ¶¶ 49, 54–61). On April 19, 2024, Dimante filed an amended complaint re-asserting the fraud claim and adding a conversion claim. (Dkt. 23 at ¶¶ 61, 74–75). Schnayderman then moved to dismiss this action for lack of personal jurisdiction, improper venue, and failure to state a claim. (Dkt. 27 ¶ 1). Dimante subsequently withdrew her conversion claim and requested leave to file a count under the theory of unjust enrichment.[1] (Dkt. 30 at 5).

## DISCUSSION

When a defendant moves to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004). At the motion to dismiss phase, the Court takes as true all well-pleaded

---

[1] Because the Court dismisses the amended complaint without prejudice, Plaintiff may include this additional count of unjust enrichment in any future pleading if they so choose. Fed. R. Civ. P. 15(a)(2); *Lauderdale-El v. Indiana Parole Bd.*, 35 F.4th 572, 576 (7th Cir. 2022) (explaining that dismissals for lack of personal jurisdiction "are necessarily without prejudice" and "leav[e] open the possibility that the parties may pursue the dispute in another forum").

factual allegations and resolves all factual disputes in the plaintiff's favor. Fed. R. Civ. P 12(b)(2); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). And "where, as here, the issue is raised by a motion to dismiss and decided on the basis of written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Tamburo*, 601 F.3d at 700. But "[w]here factual assertions amount only to vague generalizations or unsupported allegations, they are not enough to support personal jurisdiction." *Hill v. Consultants in Pathology, S.C.*, 345 F. Supp. 3d 1011, 1015 (N.D. Ill. 2018) (citation omitted).

When a federal court sits in diversity jurisdiction, the "federal court must determine if a court of the state in which it sits would have personal jurisdiction over the defendant." *Jennings*, 383 F.3d at 548. Illinois courts have "personal jurisdiction over a nonresident when Illinois's long-arm statute authorizes jurisdiction and when asserting personal jurisdiction comports with the Fourteenth Amendment's Due Process Clause." *Linkepic Inc v. Vyasil, LLC*, 146 F. Supp. 3d 943, 949 (N.D. Ill. 2015) (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707 (7th Cir. 2002)). "Under the Fourteenth Amendment's Due Process Clause, a court may exercise personal jurisdiction over an out-of-state defendant when that defendant has 'minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912–13 (7th Cir. 2015) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The "minimum contacts" analysis requires "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235,

253 (1958)). The "minimum contacts" with the forum must be such that the defendant "should reasonably anticipate being haled into court" there. *Burger King Corp*, 471 U.S. at 474–75.

Personal jurisdiction may be either general or specific. *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014). General jurisdiction requires a determination that the defendant is "essentially at home in the forum State." *Id.* at 127. Specific jurisdiction, however, "depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction over an out-of-state defendant has three "essential requirements": (1) "the defendant's contacts with the forum must show that it 'purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state;' " (2) "the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities;" and (3) "any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 398 (7th Cir. 2020) (citing *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019)). The purpose of these requirements is to "ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Curry*, 949 F.3d at 398. The "mere fact that [the defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction," and "the plaintiff cannot be the only link between the defendant and the forum." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801–802 (7th Cir. 2014) (citations omitted).

Regarding the first requirement, the purposeful availment inquiry for an intentional tort case[2] takes the form of an express aiming test that requires three elements: "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured— in the forum state." *Tamburo*, 601 F.3d at 702 (citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008)). The express aiming test requires " 'something more' beyond injury in the forum state from an alleged intentional tort." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 427 n.1 (7th Cir. 2010). The test "focuses attention on whether the defendant intentionally aimed its conduct at the forum state, rather than on the possibly incidental and constitutionally irrelevant effects of that conduct on the plaintiff." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 445 n.1 (7th Cir. 2010). Accordingly, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). In other words, even within the realm of intentional torts, it is "insufficient to rely on a defendant's 'random, fortuitous, or attenuated contacts' or on the 'unilateral activity' of a plaintiff." *Id.* at 286.

If a defendant has the requisite minimum contacts with the forum, the Court must still adjudicate whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Burger King*, 471 U.S. at 476. "Thus, courts in 'appropriate cases' may evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,'

---

[2] Under Illinois state law, fraud is an intentional tort that requires five elements: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003) (internal quotation marks and citations omitted).

'the interstate judicial system's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and 'the shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King*, 471 U.S. at 477 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Here, Dimante argues the Court has personal jurisdiction over Schnayderman because Dimante was in Illinois when Schnayderman (1) communicated with her regarding the status of her obtaining funds for the purchase price and (2) instructed her on which account in Florida she should transfer the funds to from her personal account in Illinois. (Dkt. 30 at 2). Construed charitably, Dimante maintains that Schnayderman's communication and instructions to her while she was in Illinois constitutes intentionally tortious activity "directed" or "expressly aimed" at Illinois with the knowledge that the effects would be felt by Dimante in Illinois. (*Id.*) Specifically, Dimante relies on assertions that "[t]he purchase of the house would not have occurred" without Dimante's funds, and that the funds "came from Illinois with [Schnayderman's] knowledge, communication, and instructions." (*Id.*) According to Dimante, "a substantial part of the events leading to the cause of action [therefore] occurred in Illinois." (*Id.*)

Schnayderman, however, argues he lacks minimum contacts with Illinois because he was in Florida at all relevant times, he and Dimante met in Florida, he asked Dimante to move into a house with him while the two were in Florida, and he and Dimante purchased the house in Florida. (Dkt. 28 at 4; Dkt. 31 at 2). Schnayderman further contends that Dimante's actions to secure the funds for the home purchase establish only Dimante's own contacts with Illinois, rather than meaningful contacts between Schnayderman and Illinois. (Dkt. 31 at 2). According to Schnayderman, his communication and instruction to Dimante regarding the funds "at best, only

establishes random, fortuitous, or attenuated contacts with Illinois, irrespective of his awareness that she was in Illinois at the time. (*Id.*)

Starting with the purposeful availment inquiry, the amended complaint facially satisfies the first and third elements of the express aiming test—intentional tortious conduct and knowledge that the effects would be felt in the relevant state—by alleging Schnayderman engaged in fraud with the awareness that Dimante would feel the effects in Illinois. *Tamburo*, 601 F.3d at 702; (Dkt. 30 at 2; Dkt 31 at 2). The question, then, is whether Schnayderman's alleged fraud was "expressly aimed" at Illinois. *Tamburo*, 601 F.3d at 702.

The Court finds Dimante's allegations to be insufficient to show that Schnayderman expressly aimed his allegedly fraudulent conduct at Illinois. Almost every relevant factual allegation about this fraud concerns conduct that occurred in Florida. Dimante and Schnayderman initiated their relationship in Florida. (Dkt. 23 ¶¶ 6–8). The purported false statements of material fact that Dimante alleges Schnayderman knowingly made with the intent to induce Dimante to provide half of the funds to purchase the Florida home—promises of living together and getting married—all occurred in Florida. (*Id.* at ¶¶ 10–12, 54).[3] Schnayderman and Dimante agreed to purchase the house together while the two were in Florida. (*Id.* at ¶¶ 17–18). Schnayderman and Dimante purchased the home in Florida using funds that were ultimately located in Schnayderman's personal account in Florida. (*Id.* at ¶¶ 15, 17, 29–31).

The extent of Schnayderman's contacts with Illinois include (1) his "communication" to Dimante about the "status of her obtaining the funds for her half of the purchase of the home"

---

[3] While using emails, letters, and phone calls to make protracted and repeated intentional misrepresentations can establish personal jurisdiction over out-of-state defendants, *Felland v. Clifton*, 682 F.3d 665 (7th Cir. 2012), Dimante makes no allegation that Schnayderman made protracted and repeated communications involving intentional misrepresentations to Dimante while she was in Illinois. *See, e.g., Linkepic Inc v. Vyasil, LLC*, 146 F.Supp.3d 943, 949 (N.D. Ill. 2015); *see also Levin v. Posen Found.*, 62 F. Supp. 3d 733 (N.D. Ill. 2014).

while Dimante was in Illinois and (2) his "instruction" to Dimante to deposit the funds from her personal account in Illinois into Schnayderman's personal account in Florida, rather than the two's joint account in Florida, while Dimante was in Illinois. (*Id.* at ¶¶ 25–29). In fact, Dimante first deposited the funds from her personal account in Illinois into the couple's joint account in Florida before Schnayderman provided any instruction. (*Id.* at ¶¶ 25–29). By all accounts, the alleged actions in Illinois sound more in the register of Dimante's unilateral actions in Illinois than of actions targeted at Illinois by Schnayderman. *Walden,* 571 U.S. at 286. Dimante does not allege that Schnayderman instructed Dimante to return to Illinois as part of the fraud. (Dkt. 23 ¶ 18). Nor does Dimante allege that Schnayderman instructed her on how to obtain the funds in Illinois, either through divesting from her annuity or acquiring personal loans from friends in Illinois. (*Id.* at ¶¶ 21–24). Dimante herself chose to send her friend to visit Schnayderman in Florida and assist him with obtaining a loan. (*Id.* at ¶ 19–20). On this record, the Court finds Schnayderman's contacts with Illinois to be rather attenuated and a seemingly random result of where the alleged fraud victim, Dimante, happens to reside. *Curry*, 949 F.3d at 398; *Advanced Tactical Ordnance, Sys.*, 751 F.3d at 801–802 ("[T]he plaintiff cannot be the only link between the defendant and the forum."). The Court therefore concludes that it lacks personal jurisdiction over Schnayderman because he lacks the requisite minimum contacts with Illinois. Accordingly, the Court grants Schnayderman's motion to dismiss for lack of personal jurisdiction.[4]

---

[4] Because the Court lacks personal jurisdiction over Schnayderman, it does not assess the merits of his alternative requests to dismiss or transfer for improper venue. *See Walden*, 571 U.S. at 282 ("Because we resolve the case on jurisdictional grounds, we do not decide whether venue was proper in Nevada."); *Telemedicine Solutions LLC v. WoundRight Technologies, LLC*, 27 F. Supp. 3d 883, 901 (N.D. Ill. 2014) (dismissing for lack of personal jurisdiction without reaching venue issue).

## CONCLUSION

For the reasons stated above, the Court grants Schnayderman's motion to dismiss [27] and dismisses Dimante's amended complaint without prejudice for lack of personal jurisdiction.


Virginia M. Kendall
United States District Judge

Date: November 22, 2024